First case, United States of America v. Kenneth Fleetwood. Mr. Patton. Good afternoon, Your Honors, and may it please the Court. Judge Fischer, I'd like to reserve three minutes for rebuttal, please. That request will be granted. My name is Tom Patton. I'm an assistant federal public defender here in the Western District of Pennsylvania, and I represent the appellant, Kenneth Fleetwood, in this case. This Court needs to remand this case back to Judge Cohill for further factual findings, because the record as it stands now is not sufficient to allow the Court to adequately review Judge Cohill's denial of Mr. Fleetwood's motion to suppress. Judge Cohill's finding fails to make adequate factual findings, and indeed some of the factual findings he made were incorrect, just factually incorrect. And he also clearly applied some erroneous legal reasoning in deciding that there was reasonable suspicion to believe that Mr. Fleetwood had been involved in drug activity. With regards to the factual mistakes, Judge Cohill's order starts out saying that we had the question of the partially obscured license plate, but on top of that, three other reasons for a traffic stop, let alone the drug investigation. Well, there weren't three other grounds for a traffic stop. There were a total of three grounds argued to support a traffic stop. Mr. Patton, are you familiar with the Delfin affiliate case? Doesn't that really stifle a lot of the arguments you're trying to make here? Well, Your Honor, if you have a record that allows the Court to be able to try and decipher what the Court thinks accurately is what the district court did, then the case law does support a finding in some cases of using any reasonable evidence in the record that would support the district court. But what we have in this case, as well as a requirement under Rule 12d, that when the judge is ruling on a pretrial motion where there are factual issues in dispute, once those factual issues are brought to the judge's attention, the rule requires the judge to state its essential findings of fact on the record. This is essentially a Terry stop, right? Correct, although it was argued as a Terry stop for traffic violations, or in the alternative, a Terry stop based on a reasonable suspicion that Mr. Fleetwood was engaged in drug activity. Okay, why wasn't Judge Cohill's finding that the license plate was obscured sufficient to show reasonable suspicion for a Terry stop? Because, Your Honor, the evidence that was presented to Judge Cohill was that two officers were unable to read the license plate. That would be Officers Toski and Houck. But there was no evidence presented as to where those two officers were located when they had trouble seeing the license plate. And so they called Trooper Wagner, who was also a member of the Eagle Task Force. And Trooper Wagner drove past the vehicle as it was parked out in front of 448 East 14th Street. And he specifically testified that as he drove past at a normal rate of speed, because he didn't want to give himself away as a police officer, he was in an undercover vehicle, he was able to read the license plate and clearly be able to see it. But didn't he also testify that indeed at least one of the digits on the license plate was partially obstructed? He testified that there was some snow on the license plate, but he testified that when he drove by, he was able to, at 10 o'clock at night, and he didn't even know if the Cadillac had its lights on or off, as he drove by at a normal rate of speed, the plate was not obscured in the sense that it inhibited his ability to read the plate. But does that mean it wasn't obscured as the law prohibits? I believe so, Your Honor. The only Pennsylvania case that cites the statute, and it is cited in the government's brief, it was also cited by the government in the district court, dealt with a state trooper who did a traffic stop on a 4x4 pickup truck that had mud on the license plate. And the trooper had indicated that as the trooper was following the truck at a distance of about two to three car lengths, the trooper still was having trouble reading the license plate. So she pulled the vehicle over and was only able to observe the plate after the vehicles were stopped, and she was out of her vehicle and approached and got right up to the license plate. That's the only Pennsylvania case that cites the statute. And that's Commonwealth v. Wilbur. Yes. There isn't any lengthy discussion of what obscure means or what's reasonable. They simply found that, and under the facts of that case, following at a two to three car length distance, that if the officer's inability to read the plate from that distance was not reasonable and therefore the plate was reasonably obscure. But other than that case, I am not aware of any authority that interprets that statute. Now, let's assume that the troopers who were involved in this investigation all were mistaken about the fact that that digit on that plate was obscured at all. Doesn't the decision of Delfin Colina cover that, the mistake of fact? If it's reasonable. And from where the officers were at a distance and from Officer Wagner, or Trooper Wagner going by and seeing some snow, wasn't that an objectively reasonable conclusion for them to come to, that that plate was in fact obscured in a fashion that it was a violation of the Pennsylvania Motor Vehicle Code? I would say no, Your Honor, for two reasons. And the reasons are different for Trooper Tosky and Houck from Wagner. If the government wanted to prove a reasonable mistake of fact, they had the burden of setting forth the facts that made the mistake reasonable. They chose to put on no evidence concerning where Tosky and Houck were located when they were trying to observe the license plate. And without knowing where those two officers were located when they're trying to read the license plate, there's no evidence to make a finding whether it was reasonable or unreasonable. With Trooper Wagner, when he got down to it, when he had to testify about it, he said, I drove past the vehicle at a normal rate of speed. The vehicle was parked. It's nighttime. He didn't know if the lights were on or off. He said, I was able to drive by it without slowing down, making sure I was trying to be as nonchalant as possible so that I didn't give away our surveillance, and I could read the plate. And I would submit that under those circumstances, that a reasonably trained officer could not reasonably conclude that that license plate was obscured in violation of Pennsylvania law. Now, you said that we should remand this case because of the absence of factual findings by the district court. Yes, sir. Can't we look at the record ourselves to make a determination as to whether or not the officers, based on what they testified to at the suppression hearing, had reasonable suspicion either to make a traffic stop or to make an investigatory stop for a drug investigation? I would say no. First of all, I would say no under Rule 12, what is now 12D's requirement, that the district court place its essential findings of fact on the record because the district court is the one that is supposed to be making the factual findings. Now, if factual findings are actually made, then of course this court can review the facts as found by the district court to decide whether or not those facts amount to reasonable suspicion to support a traffic stop or reasonable suspicion to believe that Mr. Fleetwood was engaged in drug activity. But this court should not in the first instance say, we're going to review the record and make our own findings of fact, and then based on those findings of fact, review it and see if there was reasonable suspicion for the traffic stop, for traffic violations, or for a reasonable suspicion of drug activity. And that's what hampers the court in this case. It's not that Judge Cowell made a lot of findings of fact and then misapplied the findings of fact. He didn't make the findings of fact. He didn't make a finding of fact that the plate was or was not obscured. He did not make a finding of fact that the Cadillac went into the intersection or did not go into the intersection. He did not make any findings of fact as to whether or not the, given the testimony as to the signaling a turn and starting a turn from the Buffalo Road onto Downing and then coming back, that that involved or engaged in careless driving and made no findings of fact about whether vehicles were around or any vehicles were put in danger by that driving maneuver. And so that's why, Judge Fischer, I say that I don't think you can do that in this case because there aren't factual findings that this court can review to decide whether or not the stop was good. Because you're supposed to review factual findings for clear error. I understand that. But if there aren't factual findings, you can't review them for clear error. How can we look at the facts of record? You can look at the facts of record, however, if the judge did not resolve disputes about the facts of record and virtually every important factual issue was disputed in the case and evidence was presented on it. And, again, I would say Rule 12d requires that the district court make that ruling. And if the district court does not, then the case should be sent back. I would argue by analogy in the Rule 28j letter that I filed, this court's approach to Rule 32i, 3b, when a defendant files an objection to a pre-sentence report, the rule requires the judge to rule on that objection or say that the judge isn't going to consider that information in making the ruling. And this court has consistently held that if the district court doesn't do that, it goes back so that that finding can be made by the district court. This court does not attempt to review the facts of record to decide what the proper resolution would be. But there are many other instances in which we do exactly that. For instance, Rule 404b, where consideration of the evidence in Rule 403, whether evidence will be unduly prejudicial and sometimes there isn't a sufficient finding, but we will look at facts of record to make a determination whether inherently the district judge had made that finding. Isn't this a similar type of situation where we can look at the facts before the district judge, if he perhaps did not intricately express his findings of fact, at least we are aware of the undisputed facts of the court. Your Honor, I see my time is up. May I answer your question? Sure. Go ahead. You always can answer my questions. Your Honor, I would not agree that the two situations are sufficiently similar to use the same analysis. District courts are set up to find facts. Appellate courts are not. When you're reviewing an evidentiary ruling by a district court, that is a legal ruling that you are reviewing. And so you may look at facts that are in the record to decide was this the correct legal ruling. But when it comes to reviewing the denial of a motion to suppress, the court's role is to review the findings of fact made by the district court for clear error and review the legal determinations de novo. And so here you're directed to review the findings of fact as made by the district court. Thank you. Thank you, Mr. Pratt. We'll have you back on rebuttal. Ms. Erwin. May it please the court, Laura Erwin from the U.S. Attorney's Office on behalf of the government. This court should affirm the decision of the district court because of the confluence of the district court's application of the correct standard of law, which is totality of the circumstances, with its findings of the essential facts. Isn't that a problem? There shouldn't be a separate from the jurisdiction? I would agree with you, Judge Rambo. This is not the pinnacle of a clear district court order on a suppression issue. But I think you need to look, in the first response to your question, the context of this case. And that has two facets, actually. One is you've got Judge Cohill. He's been on the bench for 31 years. He's presided over probably several hundred suppression issues. He's got written pleadings that he's reviewed, a day full of testimony, starts at 9, goes to 2.30. Your key witness, who is Trooper Wagner, is on the stand and subjected to direct examination four times, cross-examination three times. Judge Cohill listens to all that. He listens to the argument, and then he rules and says, I think it's clear. What about the fact that both Wagner and the other two officers were ultimately able to read the license? Is that being as close as clear? Well, I think that's part of the context you need to look at when you resolve this case. You have the two troopers in the car who say, We think it's this. We're not really sure. We've run it. It's come back at this. And Trooper Wagner knew all that. He knew he had two choices. He drives by and sees that it's partially obscured. The issue in this case, the reason why he came to the conclusion there was a violation for an obscured traffic plate was not because of what these officers said. It had nothing to do with distance. He said it was a partially obscured plate. The Pennsylvania Code is written in the disjunctive. It's from a reasonable distance, you can't make it out, or partially obscured. But he was given the basis of that information. When you look at his testimony from Mr. Piccinini, the Assistant U.S. Attorney, he asked him, So you were tuned in. You knew what you were looking for. It was either X or Y. I forget what the exact letter was. But you knew you were looking for one of those two things. And he said, Yes, I was. I also saw that the plate was partially obscured. He was subjected to cross-examination, thorough cross-examination on that issue of, It was dark. Can't you remember if there are any lights, et cetera, et cetera, to undermine his credibility. And that's the one thing I think we can all agree on, that Judge Cogill found, was that Trooper Wagner was credible. He believed that he could see and discern what the letter was, even though the plate was partially obscured. Well, then, does that make that a violation? I think under Pennsylvania law, the case that we cited in our brief, the fact that the officer could see it when she got up to the car, still means there's a violation when she couldn't see it from three lengths. And even if that violation isn't satisfactory for the court to uphold the suppression denial, there's the other issues. There's the red light, which the defense doesn't even talk about in his brief. There's also the issue of whether it was a reasonable mistake. And that would be Delfin Klena. And if that's the case, then you have to look to see whether it was objectively reasonable. And I think, given the cross-examination of the Trooper, it was objectively reasonable. Mr. Patton asked every question to undermine his credibility. You indicated that there were other traffic violations, but it's interesting that Wagner's affidavit in support of the arrest only referred to the obscure license plate and, quote, other traffic violations. And they were not discovered or specifically identified until after the detention and suppression hearing. Well, they were identified at the suppression hearing, and he was thoroughly cross-examined on those issues multiple times. Well, that's true, but you have to... Well, we can look at what his objective reasons were, and if you need to get beyond the traffic stops, those violations, you can go to the drug issue. I don't think you need to, but I think you can look at those and see what happened. Are we limited in looking at this record to Judge Cogill's findings, or can we look at the record ourselves to make a determination as to whether there's reasonable suspicion? I think this court can, as it has in the past, look at the full record and affirm if the record provides a firm basis for this court to do so. Was there reasonable suspicion to stop this car because of drug activity? I think there was. If you need to get to that point, and I can discuss the other two traffic violations if you like, but I think that there was, if you need to get to that point. You've got the information that there's people moving in from Cleveland to deal crack in the Erie area, and that was an ongoing investigation. I think that's something very important for the court to remember. But Erie's a big place. Erie's a big area. It is, and they have the information about... It's a very large city in Pennsylvania. Yeah. Unfortunately, Ford's out. Ford. State College moved up. Oh. Happy Valley. I think you can. You have the information that you know that it's an ongoing investigation. You know that you have the trash pull, the controlled by, you have the time of year, and the neighborhood in general is not a good quality neighborhood. Where is the particularized suspicion that points to either Mr. Fleetwood and whatever name he was going by at the time or any of the occupants of the White Cadillac? It's the time of day. It's the location they're in. It's his action. As the police officer understood it, using his experience to see him briefly go in and come back out in this neighborhood, I think that's where you get the particularized suspicion as well as the evasive movements of the car. At one point, Trooper Wagner thought that they were on to him, and that fed part of his quotient, this totality of the circumstances, reflective of his experience as a law enforcement officer that he had reasonable suspicion to pull the car over. Was there reasonable suspicion for the other two traffic violations? I think there was. I think for the red light violation, Mr. Patton didn't address this in his brief, so I think we can consider that to be waived, but Judge Cohill found Trooper Wagner credible, and that's what Trooper Wagner testified about. He said, and the driver had a different story, and that's the big divide here. I think that's what the court needs to recognize, is he made the essential finding of fact. I find Trooper Wagner credible. And when you see that, he observed the car slide into the intersection and come to a stop much later in the middle of the intersection and then go through. The other violation was the aborted turn onto Dowling Avenue from Buffalo. He saw that. Her testimony was, I didn't do it. His testimony was credited. So I think that there's enough for a reasonable suspicion on either of those, if the court needs to get beyond the tag issue. I think the other context that's important to understand this case is, before the district court, Mr. Fleetwood's motion to suppress was multifaceted. He challenged the stop, his removal from the car, the search of him, and then sought to suppress statements that he made at the Erie Police Department after he was taken in. So when the district court heard this case, he heard this whole panorama of evidence and heard discussion on all these arguments. So when you get to the order and you see him talking about other things, that's not post-hoc rationalization for finding the stop valid. He's addressing all the issues that Mr. Fleetwood raised. And that's why that's in there. I think it's misleading for the court to be led down the path of, he was using after-the-fact information to substantiate a stop. That's not what happened. The order needs to be read in the context of what was before the district court. And on appeal, of course, he's only challenging the stop itself, so it's irrelevant what the district court may or may not have found with regard to those other elements, those other events. Are you finding that based on the order? Because I'm not sure where you're... When you view it in context, he had to resolve all the issues of, was there an illegal stop, was there an illegal seizure, was there an illegal search? I agree with you. He did not go through lockstep like it would be in the perfect world. But I think when you read this in context of how the case progressed and how the hearing progressed, he did truncate them together, but I think this court can equally, fairly parse them out for the issue that's on appeal and separate what's on appeal versus what was before the district court. If there's no further questions, I'll allow Mr. Patton to rebut. Thank you, Ms. Irwin. Mr. Patton. Thank you, Your Honor. Judge Rambo, in response to your question that clearly Judge Cohill did use after the fact, he did. I mean, the judge said that... Then, of course, when the stop was made, we had Mr. Fleetwood with no identification, a drug scale. I think the report said something like 1,900 in cash in his pockets. Then he gives the officers a false name. On top of that, there was the question of the earlier trash pull where cocaine baggies were found. In addition to that, from that same address, we had the drug by an undercover or confidential informant. So to use the term totality of the circumstances, I think certainly the totality here adds up to a legitimate stop and arrest. No, the trash pull... 448 East 14th Street is a multi-unit apartment. They didn't even know what apartment the trash they were reviewing came from. Trooper Wagner said they did not know what apartment the trash was from. They didn't have any particularized suspicion to any of the individual apartments in the building, let alone particularized suspicion to any individual who happened to be coming out of the building because the building, you have to go through a common door to even get into the hallway where you get into the individual apartments. So all they saw was Mr. Fleetwood coming out of the common door to a multi-unit apartment. I would, on the drug issue... But even if you don't know exactly what apartment was involved and whether Mr. Fleetwood came out of that apartment, we do see him coming out of the door of a building in which there is drug activity. Now, he may be involved, he may not be involved, and certainly you can't stop him coming out the door. But when he then goes to another location where there's been a controlled bomb, not that day, but a couple weeks ago... A month and a half ago. Isn't that raising the level of suspicion, particularly in the point, you know, it's late, it's a snowy night, and he only stays very briefly in the second half? When you combine all these circumstances, doesn't it paint a very different picture than the fact that you don't know which apartment the drug activity is occurring in? No, ma'am. Number one, in Erie in early March, unfortunately, there are a lot of snowy nights. February, January... Yes, it's not rare. And 10 o'clock is not that late at night here. When you're in the eastern time zone, it's the middle of prime time. I mean, it's just, it's not real late. And the fact of him coming out of 448 East 14th Street has to be zero on the reasonable suspicion scale. Otherwise, every person that comes out of there starts with you're suspected of drug activity because we got some plastic baggies that had cocaine residue out of somebody's trash from that place. What about 2125 June Street? What about going into there? Well, June Street, wasn't that too non-solid scale? The evidence was that on January 14th, 2005, a controlled purchase had been made from somebody inside the residence of 2125 June Street. And that was a single-family residence, was it not? That is correct. It is a single-family residence, Your Honor. But there was no evidence that the person that sold the drugs was somebody who lived in that house or just happened to be at that house. As we said in the brief, one controlled buy from a month and a half ago cannot make the place a crack house. I see my time is up, but thank you. Thank you, Mr. Patton. We thank both counsels for an excellent argument, and we will take the case under advisement. Next case we'll call the case of Patricia West.